UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INTERNATIONAL SOURCING & MARKETING, LTD., Plaintiff | : | |
| v. | : | C.A. No. 04-511ML |
| MARK PETERSON, Defendant | : | |

**PLAINTIFF, INTERNATIONAL SOURCING & MARKETING, LTD's OBJECTION TO MOTION TO COMPEL FURTHER ANSWERS TO DEFENDANT's FIRST SET OF INTERROGATORIES**

Now comes Plaintiff, International Sourcing & Marketing and hereby objects to the Defendant's Motion to Compel Further Answers to First Set of Interrogatories. In opposition to said motion, ISM relies upon the accompanying memorandum of law.

INTERNATIONAL SOURCING &
MARKETING, LTD.,
By its Attorneys,

ANDREW BERG
Bar No. 4754
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113 telephone
(401) 274-0175 facsimile

CATHERINE A. SAMMARTINO
Bar No. 4762
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113 telephone
(401) 274-0175 facsimile

**CERTIFICATION**

I hereby certify that on this 26th day of September, 2005, I caused to be submitted via regular mail, postage prepaid, a copy of the within Objection to the following counsel of record:

Armando E. Batastini, Esquire
Stephen J. MacGillivray, Esquire
Edwards & Angell LLP
2800 Financial Plaza
Providence, R.I. 02903

Allen J. Anderson, Esquire
FEES & BURGESS, P.C.
213 Green Street
Huntsville, AL 35801

Mary A. Gilson

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INTERNATIONAL SOURCING & MARKETING, LTD., Plaintiff | : | |
| v. | : | C.A. No. 04-511ML |
| MARK PETERSON, Defendant | : | |

**PLAINTIFF, INTERNATIONAL SOURCING & MARKETING, LTD's MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL FURTHER ANSWERS TO DEFENDANT's FIRST SET OF INTERROGATORIES**

Plaintiff, International Sourcing & Marketing, Inc. ("ISM") respectfully submits the within Memorandum of Law in Opposition to the Defendant's Motion to Compel Further Answers to First Interrogatories. For all of the reasons set forth below, Defendant's motion ought to be denied.

**CASE TRAVEL AND OVERVIEW.** This action involves ISM's efforts to enforce, and to recover damages, for Defendant's violation of a Non-Competition and Confidentiality Agreement that Defendant executed in consideration and at the commencement of his ISM employment. The agreement prohibited Defendant from, *inter alia,* contacting customers of ISM and attempting to solicit their business for a nine month period after employment separation. Shortly following his voluntary departure from ISM, Defendant began to provide services on behalf of Pal Pilot, an entity in the same business as ISM. Defendant's services to Pal Pilot were comparable to his ISM duties, and included his efforts to solicit business from ISM customers with whom

Defendant had worked during his ISM employment. After the Rhode Island Superior Court (Silverstein, J.) granted a temporary restraining order on behalf of ISM, Defendant removed the within matter to this Court. Following removal, ISM again moved for Temporary Restraining Order. Upon this Court's consideration of the relevant pleadings as well as the transcript of proceedings before the Rhode Island Superior Court, it too granted ISM's motion for temporary restraining order (Lisi, J). Defendant subsequently assented to a Preliminary Injunction precluding him from contacting certain customers and prospective customers of ISM until May 1, 2005. These customers were identified in a document entitled "Schedule A" and incorporated by reference in the Assented Preliminary Injunction. At ISM's request, Schedule A was placed under seal.

**RESPONSES WHICH DEFENDANT DEEMS "DEFICIENT."** The following comprise the interrogatories that Defendant deems deficient, followed by ISM's answers to the same and arguments in opposition to Defendant's Motion to Compel.

**Interrogatory No. 5.** Describe all communications and list all documents evidencing communication known by you regarding Defendant's alleged breach of the non-compete agreement, alleged competition with ISM, contact with customers and/or suppliers of ISM since the end of his employment by ISM, and/or alleged use of ISM's proprietary and/or confidential information since the end of his employment by ISM.

**Answer No. 5.** Please refer to the documents produced in response to

Defendant's First Request for Production of Documents.

**Argument.** Nothing in Rule 33(d) of the Federal Rules of Civil Procedure, entitled *Option to Produce Business Records,* nor in Rule 13 of this Court's Local Rules requires a party to prepare a list of each and every document that has been properly produced in connection with a discovery request. Moreover, if ISM were required to list the considerable volume that comprises each and every document and communication that it already has provided to Defendant, such list would well exceed the limit imposed by Rule 33 that interrogatories "not exceed 25 in number, *including all discreet subparts.*" FED. R. CIV. P. 33(a)(Thomson West 2005).

Moreover, to require ISM to list each and every document and communication that it has produced to Defendant serves no legitimate purpose and is unduly costly and burdensome. For these reason's Defendant's motion to compel ought to be denied.

**Interrogatory No. 6.** Describe all facts and list all documents evidencing Defendant's alleged breach of the non-compete agreement.

**Answer No. 6.** Please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, Mr. Peterson falsely represented to ISM that he was leaving his ISM employment because he needed a change from the electronics industry (e.g., he was "burnt out"); because he planned to join the educational profession/become a teacher; because he desired to have more time to focus on his daughter's athletic endeavors; and because his spouse's income at SSCI was sufficient to enable him to focus on his options outside of electronics. After making these

representations, Mr. Peterson then began working as an independent contractor for Pal Pilot and/or its affiliates. Pal Pilot is in direct competition with ISM, and Mr. Peterson's actions represent a blatant violation of his obligations to ISM as set forth in the Confidentiality and Non-Competition Agreement.

For several weeks, and based on Mr. Peterson's misrepresentations about his future employment plans, we reasonably believed that we did not need to take measures to protect our business from competition caused by Mr. Peterson, and that he would honor his obligations as agreed and set forth in the Confidentiality and Non-Competition Agreement. We then learned, in or about September 2004, from Kevin Kayhan of SSCI, that Mr. Peterson had in fact solicited business from SSCI, in violation of the Confidentiality and Non-Competition Agreement. At that point, we began our investigation as to Mr. Peterson's activities, to determine whether he had acted in violation of the Confidentiality and Non-Competition Agreement. I spoke with Mr. Kayhan and confirmed that Mr. Peterson had discussed potential business with SSCI for the benefit of Pal Pilot and/or its affiliates, all in direct competition with ISM.

Shortly thereafter, and following the Rhode Island Superior's granting of ISM motion for injunctive relief against Mr. Peterson, Kenneth Palumbo, ISM's President, and I, spoke with Mr. Michael Sketers of Trans Tron Ltd. We determined, again, that Mr. Peterson had solicited business from Trans Tron Ltd. on behalf of Pal Pilot, in connection with the Neptune printed circuit board project, a project ISM was responsible for and Mr. Peterson was familiar with and had worked on during his ISM employment. We learned from Mr. Sketers that Mr. Peterson indicated through Rep One that he, on behalf of Pal Pilot, could offer a more competitive price than ISM for the Neptune pcbs. Mr. Peterson was

well aware of ISM's pricing methods. Rep One continued to further the efforts initiated by Mr. Peterson for Pal Pilot's benefit. ISM ultimately was asked by Mr. Michael Salmon, also of Tran Tron Ltd., to match the price quoted for printed circuit boards for a project known as the "Neptune Project." ISM was required to lower its price to .065 per unit, representing a 12% overall cost reduction. Based on annual volume, this price reduction translates to a loss of $97,500 per annum.

We also determined, through additional calls placed by me, Mr. Palumbo, and/or Mr. David Peck, that Mr. Peterson also had been in contact other ISM customers after he resigned his ISM employment.

In further response, please refer to my December 1, 2004, testimony in the proceedings before the Providence County Superior Court.

**Argument.** Defendant again seeks to require ISM to list any documents that it references in connection with its lengthy and comprehensive answer to this interrogatory. In its Request for Production, Defendant already has requested that ISM identify all documents evidencing Defendant's breach of his Confidentiality and Non-Competition Agreement (Defendant's Request for Production No. 8). Defendant need merely refer to ISM's response to said Request for Production.

Moreover, this interrogatory contains two discreet subparts. Defendant propounded 25 interrogatories total; therefore, requiring ISM to produce such a list would exceed this Court's established limit on Interrogatories.

Finally, nothing in Rule 33 of Local Rule 13 requires a party to prepare a list of the documents that it produces in response to discovery requests.

**Interrogatory No. 7.** Describe all facts and list all documents evidencing Defendant's alleged competition with ISM.

**Answer No. 7.** Please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, please refer to Interrogatory Answer No. 6.

**Argument.** ISM reiterates its' arguments set forth in opposition to Defendant's Motion to Compel Further Responses to Interrogatories Nos. 5 and 6.

**Interrogatory No. 8.** Describe all facts and list all documents evidencing Defendant's contact with customers and/or suppliers of ISM since the end of his employment by ISM.

**Answer No. 8.** Please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, please refer to Interrogatory Answer No. 6.

**Argument.** ISM reiterates its' arguments set forth in opposition to Defendant's Motion to Compel Further Responses to Interrogatories Nos. 5 and 6.

**Interrogatory No. 9.** Describe all facts and list all documents evidencing Defendant's alleged use of ISM's proprietary and/or confidential information since the end of his employment with ISM.

**Answer No. 9.** Please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, please refer to Interrogatory Answer No. 6.

**Argument.** ISM reiterates its' arguments set forth in opposition to Defendant's Motion to Compel Further Responses to Interrogatories Nos. 5 and 6.

**Interrogatory No. 11.** Describe all facts and list all documents evidencing any contact that Defendant has had with any entities listed on "Schedule A" since the end of his employment with ISM.

**Answer No. 11.** Please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, please refer to Interrogatory Answer s 6, 16, and 23.

**Argument.** Rule 33(d) does not require a party to list and business records that it produces in response to an interrogatory.

Further responding to the underlying Request for Production of Documents, Defendant's request that ISM produce any and all documents in its possession in connection with over 200 actual or prospective customers, over an indeterminate period, is overly broad and unduly burdensome.

"Schedule A" represents an attachment to the parties' January 2005 Assented Preliminary Injunction. In May 2005, Defendant propounded its' Request for Production seeking that ISM produce each and every document which evidences the relationship of more than 200 ISM customers or potential customers for an indeterminate period. Defendant's request is improper, as Defendant *agreed* to accept "Schedule A" as part of the Assented Preliminary Injunction. It ought not after the fact seek to challenge that which it agreed to accept.

In addition, the request seeks *all* documents and communications that evidence a customer or prospective customer relationship. As such it is unduly burdensome. ISM has multiple employees, many of whom communicate with existing or prospective customers. In order to respond to the within request, ISM would be required to engage in the costly and Herculean task of retrieving from various data sources (including laptop computers whose contents are not preserved on ISM's central computer system). ISM properly attempted to address the expressed concern of the Defendant (e.g., establish that ISM conducts

business, or has solicited business, from those entities identified on "Schedule A.") by providing "sample" documents demonstrating the business relationship between the ISM and the entities identified on "Schedule A."

Also, Defendant purged the content contained on his ISM-provided laptop in connection with his voluntary departure from ISM to work for its competitor. Many of the ISM customers identified on "Schedule A" were serviced by Defendant. ISM ought not be required to spend time, energy and effort, seeking to secure information that Defendant improperly destroyed. (The Confidentiality and Non-Competition Agreement between Defendant and ISM prohibits Defendant from destroying records and property of ISM.)

Finally, the information requested by Defendant (e.g., demonstrate relationships with all customers or prospective customers, despite the fact that Defendant agreed not to contact the same) is absolutely irrelevant to the remaining litigation. The injunction has expired as of April 30, 2005. As such, Defendant may contact any entity or person whom he chooses, including the entities identified in "Schedule A." The remaining claims in this litigation pertain to ISM's damages claim resulting from Defendant's breach of the Confidentiality and Non-Competition Agreement, and Peterson's counterclaims for emotional distress, breach of Contract, and interference with business advantage/prospective contract[1]. None of these claims has any relationship to the information sought by Defendant herein.

---

[1] Peterson apparently maintains that ISM's notification to its competitor that it had obtained an injunction against Defendant comprises interference with contract/business advantage.

In considering all of the above, Defendant's request seeks information that is "unreasonable [and] unduly expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." FED. R. Civ. P. 26(g)(2)(C)(Thomson West 2005).

**Interrogatory No. 12.** Describe all facts and list all documents regarding ISM bids or competition for business at, contracts with, or sales to SSCI, including the "Phillips" project, since April 2004, including an itemization of all sales to SSCI since April 2004.

**Answer No. 12.** Objection. The within interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, ISM continues to receive requests for quotes from SSCI for various projects, including the Phillips project. The quantity of SSCI requests for all project quotes has dropped since Mr. Peterson's departure. Upon information and belief, this drop emanates from SSCI's Huntsville, Alabama office.

**Argument.** ISM has no objection to providing an itemized list of bids, quotes and sales to SSCI during the requested time frame. ISM has no objection to producing requests for bids, quotes, and sales invoices between ISM and SSCI during the requested time frame. ISM objects to the request that it identify each and every document that it produces if such a response were provided pursuant to Rule 33(d), for the reasons set forth above (e.g., no separate list is required

under the applicable rules and the provision of such a list would exceed the 25 interrogatory limit, inclusive of subparts).

**Interrogatory No. 14.** Relate all facts and list all documents concerning the payment and/or refund of a $300,000 payment from ISM to SSCI for future business.

**Answer No. 14.** Objection. The within interrogatory is not reasonably calculated to lead to the discovery of admissible evidence and posed for the improper purpose of interfering with ISM's business relationship with SSCI.

**Argument.** In order to make its claim of money damages due to Peterson's violation of the Confidentiality and Non-Competition Agreement, ISM must demonstrate that it lost business due to Peterson's successful diversion of the same to Pal Pilot, his new employer. Thus, any payments between ISM to SSCI *prior to* Peterson's IMS departure have no bearing on this litigation and are not "reasonably calculated to lead to the discovery of admissible evidence."

**Interrogatory No. 15.** Relate all facts and list all documents regarding ISM bidding or competing for business at, contracts with, or making sales to Howard Industries, Trans Tron, Ltd., NCR, Verilink, and/or Adtran, including an itemization of all sales to these entities since April 2004.

**Answer No. 15.** Objection. The within interrogatory is overly broad and unduly burdensome. Without waiving said objection, please refer to the documents produced in response to Defendant's First Request for Production of Documents, which include "sample" (i.e., non-exhaustive) documentation establishing that ISM has engaged in bidding or competed for business at, or contracts with, or making sales to Howard Industries, Trans Tron, Ltd., NCR, Verilink, and/or Adtran since April 2004.

**Argument.** Here Defendant seeks not only an itemized list of all documentation but also all facts period in connection with ISM's business relationship with five of its customers. This request is unduly broad and would require extensive effort to assemble. In an attempt to address Defendant's expressed concern that he be provided an opportunity to evaluate total sales to these entities before and after Peterson's departure, ISM has no objection to the production of a spreadsheet or other documentation that depicts total sales by ISM to the identified entities during the requested time frame.

**Interrogatory No. 16.** As to each entity listed on *Schedule A*, for each individually, relate all facts and list all documents concerning ISM bidding or competing for business at, contracts with, or making sales to that entity. Include an itemization of all sales to each individual entity since April 2004.

**Answer No. 16.** Objection. The within interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Argument.** ISM reiterates its' arguments set forth in opposition to Defendant's Motion to Compel Further Responses to Interrogatories No. 11.

**Interrogatory No. 17.** Relate all facts and list all documents describing and/or relating to proprietary and/or confidential information that Defendant is allegedly using to compete with ISM, including a description of all steps used by ISM to keep such information confidential, including but not limited to any ISM policies regarding confidentiality of business, pricing and/or financial information.

**Answer No. 17.** Please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding,

please refer to ISM's answer to interrogatory No. 6. ISM keeps information confidential primarily by requiring all prospective employees to sign a Confidentiality and Non-Competition Agreement or equivalent document as a condition of their ISM employment. ISM also keeps information confidential by seeking to enforce the terms of Confidentiality and Non-Competition Agreements, or their equivalent, with regard to any former employee whom it reasonably believes has acted in contravention of his confidentiality obligations, and by notifying any known competing entity having hired or otherwise retained said employee of the existence of any confidentiality agreement in effect at the time of such hire or retention.

**Argument.** ISM has provided a comprehensive answer to this interrogatory. ISM ought not be required to list each and every document already produced to the Defendant in connection with his First Request for Production *and* provide the factual detail above. The itemized list sought by Defendant is not required under the applicable rules *and* would exceed the 25 interrogatory limit imposed by Federal Rule of Civil Procedure 33.

**Interrogatory No. 22.** Itemize all payments to Mark Peterson in 2004, including all bonuses and/or commissions. If you deny Peterson's contention in his Second Amended Counterclaim that he was due certain bonuses and commissions, state all facts and list all documents supporting that denial.

**Answer No. 22.** Mark Peterson received a $2,500 discretionary bonus in connection with the "Talla Com" transaction. I also believe that he may have received a holiday bonus or bonuses, as did other ISM employees. With regard to Mr. Peterson's claimed entitlement to any additional bonuses, Mr. Peterson failed to meet his required sales volume necessary to justify his salary and any

potential bonus entitlement. Mr. Peterson failed to meet and fell far short of his own (self-prepared) sales projections. Mr. Peterson was well aware of his failure to meet the threshold performance level needed to trigger any potential bonus entitlement; in point of fact, Mr. Peterson never requested any bonus payments until after ISM notified him of its intention to take legal action to protect its interests under the Confidentiality and Non-Competition Agreement. Moreover, no agreement to pay bonuses ever was reached and reduced to writing between Mr. Peterson and ISM.

Further responding, please refer to ISM's Response to First Request for the Production of Documents.

**Argument.**. Nothing in Rule 33(d) of the Federal Rules of Civil Procedure, entitled *Option to Produce Business Records*, nor in Rule 13 of this Court's Local Rules requires a party to prepare a list of each and every document that already has been properly produced in connection with a discovery request. Moreover, ISM has provided a comprehensive answer to this interrogatory. Defendant's repeated request that ISM "list" documents already produced repeatedly exceeds the interrogatory limit of 25 and serves no meaningful purpose. Defendant need merely review ISM's Responses to First Request for Production, which specifically identify by Tab No. (e.g., Tabs A, B, C, D, etc.) those documents that are responsive to each of Defendant's requests.

**Interrogatory No. 23.** Itemize all communications that you or any representative of ISM have had regarding Peterson since the end of his employment with ISM with the exception of communications with counsel, including the dates of all such communications, the substance of all communications, the participants and witnesses to all communications, and, if

the communications were in writing, the location of all documents evidencing those communications.

**Answer No. 23.** Objection to the extent the within interrogatory seeks information protected by attorney client privilege and the work product doctrine. Said request also is unduly burdensome and overly broad. Without waiving said objections, please refer to the documents produced in response to Defendant's First Request for Production of Documents. Further responding, please refer to my answers to interrogatories Nos. 6 and 19. Further responding, during the requested time frame, in approximately October, November and/or December 2004 I have discussed Mr. Peterson's breach of the Confidentiality and Non-Competition Agreement with Kevin Kayhan (SSCI), Michael Sketers (Trans Tron), John Greaves (Adtran), Ricky Bentley (Verilink), Mark McMeen (STI), and Alex Sullivan (Howard Industries). During the same time frame, I also have discussed the reasons offered by Mr. Peterson for his ISM departure with Mr. David Peck and Ms. Colleen Silipigni. I, Mr. Palumbo, and Mr. Peck contacted certain customers with whom Mr. Peterson had regular contact to inform them of Mr. Peterson's obligations under the Confidentiality and Non-Competition Agreement, and to attempt to determine whether he had violated his obligations under that agreement. Mr. Palumbo has discussed Mr. Peterson with Kevin Kayhan and Michael Sketers in October, November and/or December 2004, specifically, Mr. Peterson's solicitation of business on behalf of Pal Pilot Inc. Mr. Palumbo also discussed Mr. Peterson when he was asked by Michael Salmon of Trans Tron Ltd. to reduce ISM's pricing on the Neptune project.

In light of this information, our attorneys contacted Pal Pilot. Correspondence from Sammartino & Berg LLP in this regard has been provided as part of ISM's response to First Request for the Production of Documents.

**Argument.** ISM has provided a comprehensive response to this Interrogatory. ISM ought not be required to identify each and every document already produced *in addition to* its' detailed and comprehensive answer. As set forth in ISM's opposition to Motion to Compel Responses to Request for Production, ISM has provided all responsive documents *except for* those protected by the attorney client privilege and work product doctrine, to wit, ISM's counsel's notes.

**Interrogatory No. 24.** Itemize all communications that you or any representative of ISM have had with PalPilot since the end of Peterson's employment, including the dates of all such communications, the participants and witnesses to all communications, and, if the communications were in writing, the location of all documents evidencing those communications.

**Answer No. 24.** Please refer to interrogatory No. 24. Further responding, please refer to ISM's response to Defendant's First Request for the Production of Documents.

No ISM employee has had direct communication of any kind with Pal Pilot, except for my call to a telephone number that appeared on Mr. Peterson's ISM cellphone bill. The call, dated July 15, 2004, was to a California telephone number. In the midst of the injunctive relief proceedings before Judge Silverstein, on or about December 1, 2004, I contacted the number, and the person who answered the call identified himself as Tim Sullivan. I asked if he were affiliated with Pal Pilot, and he answered in the affirmative. I then terminated the call. A review of Pal Pilot's official website reveals that Mr.

Sullivan is Pal Pilot's United States Director of Production Sales. The relevant telephone record and website content have been produced as part of ISM's Response to First Request for the Production of Records.

**Argument.** ISM has provided a comprehensive response to this Interrogatory. ISM ought not be required to identify each and every document already produced *in addition to* its' detailed and comprehensive answer set forth *supra*. Responsive documents were specifically identified at Tab D in ISM's Response to Defendant's Request for Production No. 38, which sought "All documents evidencing any communications that you or any representative of ISM have had with PalPilot since the end of Peterson's employment."

**Interrogatory No. 25.** State all facts and list all documents supporting your denial of any factual allegation contained in the Second Amended Counterclaim in this matter.

**Answer No. 25.** Objection. The within interrogatory is overly broad and unduly burdensome. Without waiving said objection, please refer to the documents produced in response to Defendant's First Request for Production of Documents.

**Argument.** ISM already has produced and identified by Tab Number, comprehensive documents in response to Defendant's Request for Production No. 39, which requested "All documents supporting your denial of any factual allegation contained in the Second Amended Counterclaim in this matter." In response, ISM provided and referenced "the documents attached at Tabs A, B, C, F, and G." To require ISM also to elaborate upon each and every fact supporting

"your denial of any factual allegation contained in the Second Amended Counterclaim in this matter" well exceed the 25 interrogatory limit imposed by the applicable Rules and comprises "duplicative, redundant and excessive discovery." *See Committee Notes, 1983 Amendment*, FED. R. Civ. P. 26(a)(Thomson West 2005).

INTERNATIONAL SOURCING & MARKETING, LTD.,
By its Attorneys,

ANDREW BERG
Bar No. 4754
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113 telephone
(401) 274-0175 facsimile

CATHERINE A. SAMMARTINO
Bar No. 4762
Sammartino & Berg LLP
Shakespeare Hall
128 Dorrance Street, Suite 400
Providence, RI 02903
(401) 274-0113 telephone
(401) 274-0175 facsimile

**CERTIFICATION**

I hereby certify that on this 26th day of September, 2005, I caused to be submitted via regular mail, postage prepaid, a copy of the within Memorandum to the following counsel of record:

Armando E. Batastini, Esquire
Stephen J. MacGillivray, Esquire
Edwards & Angell LLP
2800 Financial Plaza
Providence, R.I. 02903

Allen J. Anderson, Esquire
FEES & BURGESS, P.C.
213 Green Street
Huntsville, AL 35801

Mary A. Gilson